Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN MULLEN,<br><br>    Plaintiff,<br><br>    v.<br><br>EIDOS THERAPEUTICS, INC., NEIL KUMAR, SUZANNE SAWOCHKA HOOPER, WILLIAM LIS, UMA SINHA, ALI SATVAT, and DOUGLAS "DUKE" ROHLEN,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

Plaintiff John Mullen ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against Eidos Therapeutics, Inc. ("Eidos" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in

1

connection with the proposed acquisition (the "Proposed Transaction") of Eidos by BridgeBio

Pharma, Inc., Globe Merger Sub I, Inc. and Globe Merger Sub II, Inc. (collectively, "BridgeBio").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of

the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the

SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of

the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs

complained of herein had an effect in this District, the alleged misstatements entered and the

subsequent damages occurred in this District, and the Company conducts business in New York

City.[1]

5.      In connection with the acts, conduct and other wrongs alleged in this complaint,

Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the

facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Eidos' common

stock.

---

[1] For example, the Company reportedly participated in conferences in New York City in recent years.

7. Defendant Eidos is a clinical stage biopharmaceutical company that focuses on developing drugs to treat diseases caused by transthyretin or amyloidosis. The Company is incorporated in Delaware. The Company's common stock trades on the Nasdaq Global Select Market under the ticker symbol, "EIDX."

8. Defendant Neil Kumar ("Kumar") is Chief Executive Officer ("CEO") and a director of the Company. Defendant Kumar is also a co-founder, CEO, and director of BridgeBio.

9. Defendant Suzanne Sawochka Hooper ("Hooper") is a director of the Company.

10. Defendant William Lis ("Lis") is a director of the Company.

11. Defendant Uma Sinha ("Sinha") is Chief Scientific Officer and a director of the Company. Defendant Sinha is also the Chief Scientific Officer of BridgeBio.

12. Defendant Ali Satvat ("Satvat") is a director of the Company. Defendant Satvat is also a director of BridgeBio.

13. Defendant Douglas "Duke" Rohlen ("Rohlen") is a director of the Company.

14. Defendants Kumar, Hooper, Lis, Sinha, Satvat, and Rohlen are collectively referred to herein as the "Individual Defendants."

15. Defendants Eidos and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

16. On October 5, 2020, Eidos and BridgeBio announced that they had entered into a definitive agreement under which BridgeBio would acquire all of the outstanding common stock of Eidos it does not already own, representing approximately 36.3% of Eidos' outstanding shares. Per the agreement, Eidos stockholders would have the right to receive, at their election, either 1.85

3

shares of BridgeBio common stock or $73.26 in cash per Eidos share. The transaction is subject

to approval of a majority of Eidos' shares held by stockholders other than BridgeBio and its

affiliates, as well as at least 66-2/3% of Eidos' outstanding voting shares not currently owned by

BridgeBio or its affiliates or associates, and other customary closing conditions. The press release

states, in pertinent part:

**BridgeBio Pharma and Eidos Therapeutics Announce Merger Agreement**

October 05, 2020 07:04 ET | **Source:** BridgeBio Pharma, Inc.

*BridgeBio to Acquire All Outstanding Shares of Eidos it Does Not Already Own*

*Agreement Brings BridgeBio's Clinical Development and Commercial Development Infrastructure to Bear Upon Eidos' Acoramidis, Creating Anticipated Value for Patients with ATTR and Investors*

*Agreement Unanimously Approved by Special Committee of Eidos' Independent Directors*

PALO ALTO, Calif. and SAN FRANCISCO, Oct. 05, 2020 (GLOBE NEWSWIRE) -- BridgeBio Pharma, Inc. (Nasdaq: BBIO), a company focused on genetic diseases, and Eidos Therapeutics, Inc. (Nasdaq: EIDX), a company focused on transthyretin (TTR) amyloidosis (ATTR), today announced they have entered into a definitive agreement under which BridgeBio has agreed to acquire all of the outstanding common stock of Eidos it does not already own, representing approximately 36.3% of Eidos' outstanding shares. Eidos stockholders will have the right to receive in the transaction, at their election, either 1.85 shares of BridgeBio common stock or $73.26 in cash per Eidos share in the transaction, up to an aggregate maximum of $175 million of cash. The agreement was unanimously approved by BridgeBio's Board of Directors and was approved by Eidos' Board of Directors based upon the unanimous recommendation of a special committee of independent directors of Eidos.

\*        \*        \*

**Additional Transaction Details**

Under the terms of the agreement, Eidos stockholders will be entitled to elect to receive the consideration for each share of Eidos common stock in all-stock or all-cash, subject to proration such that the cash portion of the transaction will not exceed $175 million in the aggregate.

4

- <u>All-stock consideration</u>: 1.85 shares of BridgeBio common stock per Eidos share; or

- <u>All-cash consideration</u>: $73.26 in cash per Eidos share, subject to proration.

\*     \*     \*

Eidos stockholders who do not make an election will be deemed to have elected the all-stock consideration. The transaction is intended to be treated as a reorganization for U.S. federal income tax purposes, in which case gain would be recognized by the Eidos stockholders only to the extent of any cash consideration received. At closing, Eidos stockholders will own between 16% and 18% of BridgeBio, depending on the amount of cash Eidos stockholders elect to receive.

The transaction is not subject to a financing contingency. BridgeBio intends to fund the cash consideration with available cash on hand.

The transaction, which is expected to close in the first quarter of 2021, is subject to the approval of a majority of Eidos' shares held by stockholders other than BridgeBio and its affiliates. In addition, in accordance with Section 203 of the Delaware General Corporation Law, the transaction is also subject to the approval of at least 66-2/3% of Eidos' outstanding voting shares not currently owned by BridgeBio or its affiliates or associates (as such terms are defined in Section 203 of the Delaware General Corporation Law), as well as other customary closing conditions. The issuance of shares by BridgeBio will also need to be approved by the affirmative vote of a majority of the votes cast by BridgeBio's stockholders voting on such matter. Directors of BridgeBio and their affiliates, collectively owning approximately 36% of the outstanding BridgeBio shares, have agreed to enter into voting and support agreements and have agreed to vote in favor of the share issuance. There is no filing requirement under the Hart-Scott-Rodino Antitrust Improvements Act for this transaction.

Upon closing, Eidos will become a wholly owned subsidiary of BridgeBio and Eidos' common stock will cease trading independently on The Nasdaq Global Select Market.

**Advisors**
Goldman Sachs & Co. LLC and J.P. Morgan Securities LLC are acting as financial advisors to BridgeBio, and Skadden, Arps, Slate, Meagher & Flom LLP is providing legal counsel. Centerview Partners LLC is acting as financial advisor to the special committee of Eidos' Board, and Cravath, Swaine & Moore LLP is providing legal counsel to the special committee.

**About BridgeBio Pharma**

BridgeBio Pharma is a team of experienced drug discoverers, developers and innovators working to create life-altering medicines that target well-characterized genetic diseases at their source. BridgeBio was founded in 2015 to identify and advance transformative medicines to treat patients who suffer from Mendelian diseases, which are diseases that arise from defects in a single gene, and cancers with clear genetic drivers. BridgeBio's pipeline of over 20 development programs includes product candidates ranging from early discovery to late-stage development. For more information visit www.bridgebio.com.

**About Eidos Therapeutics**
Eidos Therapeutics is a clinical stage biopharmaceutical company focused on addressing the large and growing unmet need in diseases caused by transthyretin (TTR) amyloidosis (ATTR). Eidos is developing acoramidis, a potentially disease-modifying therapy for the treatment of ATTR. For more information, visit www.eidostx.com.

17.     On December 15, 2020, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") under the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

18.     The Proxy Statement, which recommends that Eidos shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Eidos' and BridgeBio's financial projections; (ii) the financial analyses performed by Eidos' special committee's[2] financial advisor, Centerview Partners LLC ("Centerview"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Centerview; and (iv) the sales process leading up to the Proposed Transaction.

19.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the

---

[2] The Eidos special committee refers to Defendants Hooper and Lis who were delegated, among other things, power to evaluate and negotiate the terms of the Proposed Transaction and alternatives to the Proposed Transaction.

Mergers; (ii) Recommendations of the Eidos Special Committee and the Eidos Board of Directors; Reasons for Eidos to Enter into the Merger Agreement; (iii) Opinion of the Eidos Special Committee's Financial Advisor; and (iv) Certain Unaudited Prospective Financial Information.

20. Unless and until the material misstatements and omissions (referenced below) are remedied before the January 19, 2021 shareholder vote on the Proposed Transaction, Eidos shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Eidos' and BridgeBios' Financial Projections

21. The Proxy Statement omits material information concerning Eidos' and BridgeBio's financial projections.

22. The Proxy Statement provides that, in connection with the Proposed Transaction and other strategic alternatives available to the Company, "Eidos management made available to the 2019 special committee[3] and the Eidos special committee certain non-public internal financial projections regarding the potential future performance of Eidos" (the "Eidos Management Projections"). The Eidos Management Projections were reviewed and subsequently adjusted by the Eidos special committee based on the Eidos special committee's and its advisors' due diligence investigation (the "Adjusted Eidos Projections"). The Adjusted Eidos Projections were considered by the Eidos special committee in considering and evaluating the Proposed Transaction, and were utilized by Centerview in connection with its fairness opinion and related financial analyses.

---

[3] The 2019 special committee consisted of Rajeev Shah and Defendant Lis who were charged with considering and evaluating a possible sale or other business transaction or series of transactions involving all or substantially all of Eidos' equity or assets or alternatives to any such transaction(s), including Eidos continuing to operate as an independent company.

23. Additionally, the Proxy Statement provides that, "in connection with the Eidos special committee's evaluation of a transaction with BridgeBio, BridgeBio management made available to the Eidos special committee certain non-public internal financial projections regarding the potential future performance of BridgeBio (excluding Eidos)" (the "BridgeBio Management Projections"). The BridgeBio Management Projections were reviewed and subsequently adjusted by the Eidos special committee, after consultation with its advisors (the "Adjusted BridgeBio Projections"). The Adjusted BridgeBio Projections were considered by the Eidos special committee in evaluating the Proposed Transaction, and were utilized by Centerview in connection with its fairness opinion and related financial analyses.

24. The Proxy Statement provides tables of the purported Eidos Management Projections, Adjusted Eidos Projections, BridgeBio Management Projections, and Adjusted BridgeBio Projections (collectively, the "Projections").

25. The Proxy Statement, however, fails to disclose the following concerning the Projections: (1) all line items underlying (i) Revenue, (ii) EBIT and (iii) Unlevered Free Cash Flow; (2) Eidos' and BridgeBio's respective net income projections; and (3) a reconciliation of all non-GAAP to GAAP financial metrics.

26. The Proxy Statement provides that:

On August 21, 2019, BridgeBio granted the members of the 2019 special committee, Centerview and Cravath access to an electronic data room containing certain due diligence materials regarding BridgeBio, including a management presentation and certain financial projections for BridgeBio (excluding Eidos) prepared by BridgeBio management.

Later on August 21, 2019, Eidos granted the members of the 2019 special committee, Centerview and Cravath access to an electronic data room containing certain due diligence materials regarding Eidos, including certain internal financial projections for Eidos prepared by Eidos management.

\* \* \*

8

On September 6, 2019, the 2019 special committee held a telephonic meeting to review the Eidos financial projections provided by management of Eidos and the BridgeBio financial projections provided by management of BridgeBio and the key assumptions underlying such projections, with representatives of Centerview, Cravath and Navigant participating. . . . After discussion, the 2019 special committee noted that it would be appropriate to make adjustments to the management projections, including adjustments based on the 2019 special committee's assessment of the probability of success and underlying product assumptions of each product candidate. Representatives of Navigant discussed their assessment of the key assumptions underlying the management projections and potential revisions to such projections based on Navigant's research. After discussion regarding these assumptions and potential adjustments, the 2019 special committee requested that Centerview present adjusted projections reflecting the adjustments that had been discussed for the 2019 special committee's review at the next committee meeting.

27.    The Proxy Statement, however, fails to disclose: (1) BridgeBio management's financial projections for BridgeBio provided to the 2019 special committee in August 2019 (the "2019 BridgeBio Projections"); (2) Eidos management's financial projections for Eidos provided to the 2019 special committee in August 2019 (the "2019 Eidos Projections"); and (3) the adjustments to the 2019 BridgeBio Projections and 2019 Eidos Projections, including adjustments based on the 2019 special committee's assessment of the probability of success and underlying product assumptions of each product candidate.

28.    The Proxy Statement further provides that:

Later on September 10, 2020, BridgeBio made available to the Eidos special committee and its advisors via an electronic data room BridgeBio management's projections for BridgeBio (excluding Eidos) that had been updated to reflect recent developments and management's current assumptions, which projections are referred to as the "BridgeBio management projections" (see the section entitled "—*Certain Unaudited Prospective Financial Information*").

\*    \*    \*

On September 24, 2020, the Eidos special committee held a videoconference meeting, with representatives of Centerview, Cravath and Guidehouse participating. Representatives of Guidehouse reviewed the assumptions underlying the BridgeBio management projections and assumptions regarding Eidos that had

been discussed with Eidos management during due diligence calls, as well as Guidehouse's recommended adjustments to such assumptions. The Eidos special committee discussed the assumptions made by management of BridgeBio and Eidos as well as Guidehouse's recommended adjustments, and directed Centerview to make additional adjustments to the BridgeBio management projections.

On September 25, 2020, the Eidos special committee held a videoconference meeting, with representatives of Centerview and Cravath participating. Representatives of Centerview reviewed the BridgeBio management projections, including the impact of adjustments discussed at the meeting of the Eidos special committee on September 24, 2020. After discussion, the Eidos special committee requested that Centerview and Guidehouse conduct additional due diligence regarding certain assumptions and prepare further adjusted projections for each of Eidos and BridgeBio reflecting such assumptions for further discussion with the Eidos special committee.

29.     The Proxy Statement, however, fails to adequately disclose and quantify the impact of the adjustments that the Eidos special committee directed Centerview to make to the aforementioned financial projections of Eidos and BridgeBio.

30.     When a company discloses non-GAAP financial metrics in a Proxy Statement, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[4]

---

[4] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Dec. 29, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

31.     The disclosure of the aforementioned information is material because it would provide the Company's shareholders with a basis to project the future financial performances of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

32.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2.  Material Omissions Concerning Centerview's Analyses

33.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Centerview.

34.     The Proxy Statement provides that, in connection with Centerview's fairness opinion, Centerview reviewed "certain tax and other cost savings and operating synergies projected by the Eidos special committee to result from the transaction furnished to Centerview by the Eidos special committee for purposes of Centerview's analysis (referred to in this summary of Centerview's opinion as the 'synergies')." The Proxy Statement, however, fails to disclose the synergies.

35.     The Proxy Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*" of Eidos and BridgeBio: (1) the individual inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%; (2) all line items underlying the risk-adjusted, after-tax unlevered free cash flows of Eidos over the period

11

beginning in 2021 and ending in 2035; (3) all line items underlying the risk-adjusted, after-tax unlevered free cash flows of BridgeBio (excluding Eidos) over the period beginning in 2021 and ending in 2047; (4) the assumed synergies; (5) the implied terminal values of Eidos and of BridgeBio (excluding Eidos); (6) the basis of Centerview's assumption that Eidos' and BridgeBio's respective after-tax unlevered free cash flows for the terminal year would decline 80% year-over-year in perpetuity; (7) the number of fully diluted outstanding shares of Eidos and BridgeBio common stock as of October 2, 2020, respectively; and (8) the value of federal net operating losses and future losses.

36. With respect to Centerview's "*Analyst Price Target Analysis*," the Proxy Statement fails to disclose: (1) the individual price targets observed by Centerview in its analysis; and (2) the sources thereof.

37. With respect to Centerview's "*Precedent Premiums Paid Analysis*," the Proxy Statement fails to disclose each transaction and the individual premiums paid therein.

38. The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to Eidos shareholders. The description of Centerview's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Eidos shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Centerview

39.    The Proxy Statement omits material information concerning potential conflicts of interest involving Centerview.

40.    The Proxy Statement provides that:

In 2019, Centerview was engaged to provide financial advisory services to the 2019 special committee in connection with such committee's evaluation of strategic alternatives, including a potential transaction between BridgeBio and Eidos. In connection with such services provided to the 2019 special committee, in the second quarter of 2020, Centerview became entitled to receive fees from Eidos of $5 million, $2.5 million of which was paid by Eidos to Centerview in the third quarter of 2020 and the remaining $2.5 million of which may become payable in the future upon satisfaction of certain conditions.

41.    The Proxy Statement, however, fails to disclose the "certain conditions" Centerview must satisfy to be entitled to the remaining $2.5 million in compensation, and whether Eidos expects to pay Centerview the remaining $2.5 million.

42.    Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

43.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

44.    The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

45.    The Proxy Statement provides that, during the sales process, Eidos was engaged in

discussions with Company C concerning a potential strategic transaction, stating in pertinent part:

> [O]n November 28, 2020, the Eidos special committee held a telephonic meeting, with representatives of Centerview and Cravath participating. . . . After discussion, the Eidos special committee determined that, prior to engaging in discussions with BridgeBio regarding the potential for an acquisition by Company C of a minority stake in Eidos, the Eidos special committee would request that Company C communicate to the Eidos special committee the price at which Company C would be willing to enter into such a transaction. The Eidos special committee also authorized Cravath to share a draft confidentiality agreement with Company C.

> After the meeting, representatives of Cravath contacted representatives of outside legal counsel to Company C to convey the Eidos special committee's request and also shared a draft confidentiality agreement between Company C and Eidos.

46. The Proxy Statement, however, fails to disclose whether Eidos and Company C executed a confidentiality agreement, and if so, the terms thereof, including whether such agreement contained a standstill provision with a "don't ask, don't waive" (DADW) provision (including its time of enforcement) that would preclude Company C from making a superior offer for the Company.

47. Without this information, Eidos shareholders may have the mistaken belief that Company C was or is permitted to submit a superior proposal for the Company, when in fact it is or was contractually prohibited from doing so. This information is material because a reasonable Eidos shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

48. The Proxy Statement provides that, during the sales process, Company C submitted proposals to acquire Eidos, but BridgeBio determined that none of Company C's proposals were attractive and was therefore not willing to engage in any type of transaction proposed by Company C. The Proxy Statement, however, fails to disclose the Eidos special committee's response to BridgeBio's refusal to consider Company C's proposals and why it recommends that shareholders vote in favor of the Proposed Transaction, in light of the fact that Company C's all cash offers

(between $120.00 and $110.00 per share) were approximately ***$37 and $47 per share higher*** than the cash consideration Eidos ultimately agreed to in the Proposed Transaction ($73.26 per share).

49.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

<u>**COUNT I**</u>
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
<u>**Against All Defendants**</u>

50.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.    During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

52.    Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

53.    The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

54.    By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange

Act and Rule 14a-9 promulgated thereunder.

55.    Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

56.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.    The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

58.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

59.    In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power

to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

60.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

61.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 29, 2020                  Respectfully submitted,

                                          **HALPER SADEH LLP**

                                          By: /s/ Daniel Sadeh
                                          Daniel Sadeh, Esq.
                                          Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                          667 Madison Avenue, 5th Floor
                                          New York, NY 10065
                                          Telephone: (212) 763-0060
                                          Facsimile: (646) 776-2600
                                          Email: sadeh@halpersadeh.com
                                                  zhalper@halpersadeh.com

                                          *Counsel for Plaintiff*